MARY KING v. BUCKEYE COTTON OIL COMPANY.

(*Nashville.* December Term, 1926.)

Opinion filed July 15, 1927.

1. WORKMEN'S COMPENSATION ACT. Acts 1919, ch. 123. Finding of facts by trial court. Conclusions.

While this court is bound by the findings of the trial judge on the question of fact, whenever there is any evidence to sustain the finding, it is not bound by the conclusions drawn from undisputed facts, and may reach a different conclusion from that of the trial court. (Post, p. 495.)

Citing: Moore v. C. N. O. & T. P. Ry. Co., 148 Tenn., 561.

2. SAME. Same. Construction of sec. 2-d, Acts 1919, ch. 123.

"Injury" and "personal injury" mean only injury by accident arising out of and in the course of employment, and do not include a disease, except as it shall naturally result from the injury. (Post, p. 494-500.)

3. SAME. Same. Resulting disease.

Whenever an injury by accident can be said to have been the moving, exciting or contributing cause of a resulting disease, such disease must be said to have "naturally resulted" from the injury, and it is wholly immaterial whether such disease often or usually results from similar injuries. It is sufficient in a particular case, if a requisite casual connection is established between the injury and the disease. (Post, p. 494-503.)

Citing: Bry-Block Mercantile Co. v. Carson, 154 Tenn., 273, 288 S. W. 726; Patton Hotel Co. v. Miller, 145 Tenn., 632; Bramble v. Shields (Md.), 127 Atl., 44; Anderson v. Industrial Insurance Commission, 116 Wash., 421; 199 Pac., 747.

4. SAME. Same. Same. Heat prostration. Accident.

Where a fireman while in the performance of his duties, was stricken by heat and prostrated, a condition unusual, unexpected and casual, was removed and bathed with cold water for the pur-

pose of restoration, dying four days later from pneumonia, contracted two days before death; who prior to the time stricken was in good health, and room where prostrated well ventilated, and boilers properly constructed, **held** that heat prostration amounted to an injury by accident, within the meaning of the Compensation Act. (Post, p. 495-501.)

Citing: Meade Fiber Corp. v. Starnes, 147 Tenn., 362; Fenton v. Thorley (1903), A. C., 443; Ismay, Imrie & Co. v. Williamson (1906), App. Cas., 437; Connelly v. Hunt Furniture Co., 240 N. Y., 83; Workmen's Compensation Law (Cons. Law, ch. 67), par. 2, ss. 7; Lewis v. Ocean Accident & Guarantee Corp., 224 N. Y., 18, 21; Van Vechten v. Am. E. F. Ins. Co., 239 N. Y., 303, 307.

5. **SUPREME COURT PRACTICE. Remand, that justice may be done.**

The court may remand, where it is of the opinion that ends of justice require a reversal and a new trial, but not as to a matter to which no reference was made in finding of facts of the trial court, nor there controverted. (Post, p. 504.)

Citing: Motor Wheel Corporation v. H. E. Coffey, M. S. January 30, 1926; Section 4905 of Shannon's Code, (Code 1858, sec. 3170.)

6. **SAME. Pleading and practice. Essential averments.**

The burden is upon the petitioner to prove essential averments, and bring the defndant within application of the statute. (Post, p. 504.)

Citing: Motor Wheel Corporation v. H. E. Coffey (M. S.), Jan. 30, 1926.

FROM SHELBY.

Appeal from Circuit Court of Shelby County.—HON. W. B. ROSENFIELD, Special Judge.

FLOYD CREASY, for appellant.

METCALF, METCALF & APPERSON and C. C. CLIVE, for appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Mary King has appealed from a judgment of the Circuit Court of Shelby County dismissing her petition for compensation for the death of her husband, Ezekiel King, under the provisions of the Workmen's Compensation Law, Chapter 123 of the Public Acts of 1919.

The assignments of error are directed at the action of the trial judge in overruling the petitioner's motion for a new trial. The evidence introduced in the Circuit Court was not preserved by bill of exceptions, and the merits of the assignments of error are to be tested by written findings of fact, and a written opinion of the trial judge showing his conclusions of law on the facts found.

Ezekiel King was employed by the defendant corporation as a fireman in its boiler room. While in the performance of his duties as fireman he was stricken by heat and suffered with what is usually termed heat prostration. He was removed from the boiler room and bathed with cold water for the purpose of restoring him from a semi-conscious condition. A physician having been summoned, he was taken to a hospital where he died four days later. The workman was stricken about the middle of the afternoon on a very hot day, the government thermometer in the city registering a temperature of ninety-nine degrees at the time. Two deaths resulting from heat prostration occurred in the city on the same day, as the result of exposure to the rays of the sun and humidity. Nothing unusual occurred at the place where King was stricken except the fact of his misfortune.

The immediate cause of the death of the workman was pneumonia, which developed on September 10, two days after he was stricken and two days before his death.

Prior to the time he was stricken the workman was in good health. The room in which the workman was stricken was well ventilated and the boilers were properly constructed and in good condition. The court found as a fact "that the heat prostration was an exciting or contributing cause of the development of pneumonia;" and in response to the defendant's request for additional findings of fact, the trial court further found that it could not determine and find that the heat prostration "was the direct and proximate cause of pneumonia from which King died, but that it was a contributing, moving or exciting cause."

The written opinion of the trial court discloses that the court was of the opinion that because the workman was employed as a fireman and subjected continuously to unusual heat conditions, the heat exhaustion from which he suffered might properly be termed "an occupational occurrence," and that it was not an injury within the purview of the Workmen's Compensation Statute.

The trial court was further of the opinion that the pneumonia, which was the immediate cause of death, was not a disease "naturally resulting" from the heat prostration, because it was not a disease usually, often or probably resulting from heat prostration.

On these two grounds the trial court reached the conclusion that the petitioner had failed to maintain her right to compensation for the death of her husband.

The injury for which compensation may be awarded under the statute is defined in Section 2, as follows:

" 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of employment, and shall not include a disease in any form except as it shall naturally result from the injury."

While this court is bound by the findings of the trial judge on questions of fact, whenever there is any evidence to sustain the finding, it is not bound by the conclusions drawn by the trial judge from undisputed facts, and may reach a different conclusion from that of the trial court on the same findings of fact. *Moore* v. *C. N. O. & T. P. Ry. Co.,* 148 Tenn., 561.

The brief of the defendant presents the contention that the ''heat prostration'' suffered by King was an ''occupational disease'' and not an injury within the statutory definition; and that if it can properly be said to have been an injury, it was not an ''injury by accident,'' for the reason that no untoward or unusual occurrence brought it about.

We have found great conflict in the opinions of courts of other jurisdictions as to whether injury or death from heat prostration is within the application of the Workmen's Compensation Statutes. The divergence of opinion on the question is so far controlled by differences in the language of the various statutes we have found it impracticable to refer to authorities other than those in accord with the conclusions we have reached. We make no effort to find the ''weight of authority'' on the subject.

In *Meade Fiber Corp.* v. *Starnes,* 147 Tenn., 362, compensation was denied to the surviving dependents of a deceased workman whose death was the result of a disease caused by the constant breathing of dust from sacks of soda ash which it was the duty of the deceased workman to handle and move. The question determined by the court was that the disease resulting from the breathing of the dust necessarily caused by the very work in which the employee was engaged did not constitute an accidental injury. The court was of the opinion that the

breathing of the dust under such circumstances did not have any element of accident, and for that reason compensation was denied.

Referring to the meaning to be given to the word "accident," as it appears in the statutory definition of injuries within the application of the statute, the court, in *Meade Fiber Corp.* v. *Starnes,* supra, said:

"It is quite true that the use of the words 'accident' or 'accidental' in compensation statutes is not to be given a technical or literal meaning, but this does not mean that they are to be given no qualifying meaning at all. Certainly they imply that the injury must partake of the unusual, casual, or fortuitous. The word 'accident' is derived from the Latin '*ad cidere,*' meaning to fall, a befalling, or not designed, and is usually applied to an event or happening in the nature of a misfortune, casual or fortuitous. In some of the statutes the word 'accident' has been defined to mean an unexpected or unforeseen event, happening suddenly or violently, with or without careless fault; producing some objective symptom of injury. The courts generally in dealing with the word have given it a somewhat similar definition. Under statutes like ours, occupational diseases have almost uniformly been held not to be included within the term."

If the dust inhaled by the workmen in the case just referred to had brought about such an irritation in his throat, while he was at work, as to cause a sudden and violent paroxysm of coughing, resulting in the rupture of a blood vessel, from which the workman suffered incapacity or death, we do not think the reasoning of the court denying compensation would have been applicable.

So, in the present case, if the workman overheated to a degree short of prostration or exhaustion, had stepped

outside the boiler room, and cooling off too quickly, had contracted a cold, resulting in pneumonia, no element of accident or injury by accident would have been present, and the cold and pneumonia, whether within the category of occupational diseases or not, would clearly not be an injury by accident or the result thereof. In such a case the overheated condition of the workman would be the natural result of the character of work in which he was engaged.

Or if a fireman, by reason of his daily exposure to the increased heat of a boiler room, should become gradually impaired in strength and in his powers of resistance, and should thereby become subject to a disease, his case would clearly be within the rule applied in *Meade Fiber Corp.* v. *Starnes,* supra.

We do not think, however, that heat exhaustion or heat prostration can be said to be a necessary incident or an expected result of employment as a fireman in a boiler room. Whether the condition be caused solely and entirely by the excessive temperature of the room or place in which the employee is at work, or whether the excessive temperature of the place and the present physical condition of the workman combine to produce the result, there is an element of sudden, unforeseen and unexpected casualty and misfortune in the result. The fireman expected to become hot, but he did not expect to become overheated to the point of exhaustion or prostration. The difference may be one only of degree, but we see no reason why such a difference may not mark the boundary between the expected or anticipated and the unexpected or fortuitous. Certainly it marked the boundary, in the case of the deceased workman, between safety and misfortune.

In *Meade Fiber Corp.* v. *Starnes,* supra, the court stated that the word "accident," as used in the compensation statute, is not to be given a technical or literal meaning.

An early definition of the word, as used in such a statute, is to be found in the opinion of Lord Macnaghten, in *Fenton* v. *Thorley* (1903), A. C., 443, a leading case in England, as follows:

"I come, therefore, to the conclusion that the expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed."

In the case of *Ismay, Imrie & Co.* v. *Williamson,* 1908 App. Cas., 437, compensation was sought for the death of an employee in the boiler room of a steamship, who was stricken with a "heat-stroke," and placed in a hospital, where he died as a result thereof. It was contended by the employer that the death was from disease and not by accident; that the disease was a common one in the particular work, and in this case operated upon a man already debilitated by want.

Referring to the case of *Fenton* v. *Thorley,* supra, as conclusive authority for the meaning to be given the word "accident" in the compensation statute, the House of Lords reached the conclusion that the death of the workman was from accident, within the meaning of the statute. In the opinion of Lord Loreburn it was said:

"In my view this man died from an accident. What killed him was a heat-stroke coming suddenly and unexpectedly upon him while at work. Such a stroke is an unusual effect of a known cause, often, no doubt, threatened, but generally averted by precautions which experience, in this instance, had not taught. It was an unlooked for mishap in the course of his employment. In common language, it was a case of accidental death.

"I feel that in construing this Act of Parliament, as in other cases, there is a risk of frustrating it by excess of subtlety, which I am anxious to avoid."

, The dissenting opinion of Lord MACNAGHTEN in *Ismay, Imrie & Co.* v. *Williamson,* supra, was predicated upon the additional fact, not present in the case at bar, that the workman was in such poor physical condition that his death, in the opinion of Lord MACNAGHTEN, was due to his physical state and the nature of his employment, so that it was not an "injury by accident."

The majority holding in *Ismay, Imrie & Co.* v. *Williamson,* supra, was that the injury from heat-stroke suffered by the deceased workman was a disease, but that it was nevertheless a "personal injury by accident" within the Statute of 1906 authorizing compensation in respect of a disease, other than those expressly named in the act, "if the disease is a personal injury by accident within the meaning of the act."

We do not find anything in our statute, nor in the opinion of *Meade Fiber Corp.* v. *Starnes,* supra, which would exclude from the application of the statute any "injury by accident," regardless of whether the injury is made manifest by a condition of the body which medical science terms a diseased condition rather than a traumatic condition. The exclusion is of any disease which does not amount to an "injury by accident," or which does not naturally result from such an injury.

In the case of *Connelly* v. *Hunt Furniture Co.,* 240 N. Y., 83, compensation was sought for the death of a workman employed by an undertaker, who came to his death by reason of the fact that, while handling a corpse, infection got into his system through a little cut on his hand, from which he suffered general blood poison. De-

fense was made on the ground that there was no injury by accident, in response to which the Court of Appeals of New York said:

" ' "Injury" and "personal injury" mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom' [Workmen's Compensation Law (Cons. Laws, ch. 67), Section 2, subd. 7]. A trifling scratch was turned into a deadly wound by contact with a poisonous substance. We think the injection of the poison was itself an accidental injury within the meaning of the statute. More than this, the contact had its occasion in the performance of the servant's duties. There was thus not merely an accident, but one due to the employment. We attempt no scientifically exact discrimination between accident and disease or between disease and injury. None perhaps is possible, for the two concepts are not always exclusive, the one of the other, but often overlap. The tests to be applied are those of common understanding as revealed in common speech (*Lewis* v. *Ocean Accident & Guarantee Corporation,* 224 N. Y., 18, 21; cf. *Van Vechten* v. *Am. E. F. Ins. Co.,* 239 N. Y., 303, 307). We have little doubt that common understanding would envisage this mishap as an accident, and that common speech would so describe it."

In the same case, the Court of Appeals of New York referred in argument to various instances of disease arising under such circumstances as to amount to an injury by accident. The court said:

"Sunstroke, strictly speaking, is a disease, but the suddenness of its approach and its catastrophic nature have caused it to be classified as an accident (*Ismay, Imrie & Co.* v. *Williamson,* 1908 A. C., 437, 441; *Gallagher* v. *Fi-*

*delity & Casualty Co.,* 163 App. Div., 556, 221 N. Y., 664; *Matter of Murray* v. *Cummings Construction Co.,* 232 N. Y., 507). Tuberculosis is a disease, yet if it results from the sudden inhalation of poisonous fumes, it may also be an accident (*Matter of O'Dell* v. *Adirondack Electric Power Co.,* 223 N. Y., 686). A like ruling has been made where some extreme and exceptional exposure has induced pneumonia or rheumatism (*Coyle* v. *Watson, Ltd.,* (1915), A. C. 1; *Glasgow Coal Co., Ltd.,* v. *Welsh* (1916), 2 A. C., 1, 10)."

If the heat prostration suffered by the workman in the case at bar is to be classed as a disease, then it is assignable to the fact that at a particular identified time the workman, while in the course of his employment, became overheated, a condition unusual, unexpected and casual. For the reasons stated hereinabove, and in the authorities cited, we are of the opinion that the heat prostration described in the findings of fact of the trial court amounted to an injury by accident, within the meaning of our compensation statute.

It remains to be considered whether the pneumonia, which was the direct and efficient cause of the death of the workman, must be said to have "naturally resulted" from the injury, in view of the finding of fact that the heat prostration "was an exciting or contributing cause of the developmnt of pneumonia," and "was a contributing, moving or exciting cause."

In *Bry-Block Mercantile Co.* v. *Carson,* decided by this court December 18, 1926, 288 S. W., 726, the plaintiff sought to recover compensation for the death of her husband on the ground that his death was the result of disease resulting from an operation rendered necessary by an accidental injury. In that case this court said:

''(1) It would be necessary, to recovery by petitioner on the first theory of her case, to show that the immediate cause of her husband's death was the natural consequence of the injury he received in his employment, or of the operation following such injury. If he died from an independent or intervening cause, she would not be entitled to recover in this phase of her case.''

In *Patton Hotel Co.* v. *Miller,* 145 Tenn., 632, question was made as to whether the death of the deceased employee arose out of and in the course of his employment, and in the determination of that question this court held it sufficient that the evidence establish ''a causal connection between the conditions under which the work is required to be performed and the resulting injury.''

The trial judge was of the opinion that the pneumonia could not be said to have ''naturally resulted'' from the heat prostration because he construed the phrase ''naturally resulting'' to mean ''usually,'' ''often'' or ''probably'' resulting.

In the case of *Bramble* v. *Shields* (Md.), 127 Atl., 44, there was an inquiry as to whether an existing disability of the plaintiff was the ''natural result'' of an accident, within the meaning of a compensation statute. The Court of Appeals of Maryland approved an instruction of the trial judge to the jury, which was as follows:

''And the jury is further instructed that the term 'natural result' means that it must be shown that there is a causal connection between the accident and the mental disease of Shields; or that the mental disease with which Shields is suffering is, with reasonable certainty, directly attributable to the accident.''

In the same case the Maryland court clearly stated the difference in the rule to be followed in construing the

language of compensation statutes from that followed in construing statutes applicable to cases of negligence and breach of contract, particularly as to the phrase "natural result." The court said:

"But in cases arising under the Workmen's Compensation law the question of negligence is excluded, and with it the rule as to reasonable and probable consequence would also be excluded, if such rule were applicable here. The only test is: Did the accidental injury arise out of and in the course of employment? If it did, it makes no difference whether it was a normal or abnormal occurrence, and so with 'any such disease or infection as may naturally result therefrom.' It can make no difference whether the results are usual or unusual, if there is a direct causal connection between the injury and the disease, so that the disease is directly attributable to the injury."

To the same general effect is the holding in *Anderson v. Industrial Insurance Commission*, 116 Wash., 421, 199 Pac., 747.

We are of the opinion that whenever an injury by accident can be said to have been the moving, exciting or contributing cause of a resulting disease, such disease must be said to have "naturally resulted" from the injury, and it is wholly immaterial whether such disease often or usually results from similar injuries. It is sufficient in a particular case, if a requisite causal connection is established between the injury and the disease.

It is our opinion, therefore, that the trial judge drew erroneous conclusions of law from the facts found by him, from which we are compelled to disagree.

The findings of fact in the record do not contain a finding that the defendant corporation employed as many

as five employees at the date of the accident in question, and it is urged' for the defendant that the judgment of the trial court dismissing the case should be affirmed for that reason.

It appears inferentially from the record that the application of the compensation statute to the contract of employment was not contested or controverted, and it may fairly be assumed that the omission of this finding of fact was not an oversight or inadvertence.

The answer of the defendant corporation made general denial of all of the averments of the petition, and the proceeding being equitable in its nature, as expressly provided in the statute, every essential averment of fact in the petition not admitted by the answer was denied, and the burden was upon the petitioner to prove the averment that the defendant corporation had the requisite number of employees to bring it within the application of the compensation statute. It was so held by this court in a memorandum opinion prepared by Justice HALL in the case of *Motor Wheel Corporation* v. *H. E. Coffey,* filed January 30, 1926.

In the case just cited this court declined to remand the case for a new trial, in order that the petitioner might prove the omitted fact showing the application of the statute to the contract of employment, because in the findings of fact the trial judge had pointed out the failure of the proof to show the number of employees of the employer.

Here no reference was made in the findings of fact to this proposition. The case was vigorously contested on the two propositions herein considered, and, under the circumstances, we think the ends of justice require a reversal and a new trial, as authorized by Section 4905 of Shannon's Code; Code of 1858, Section 3170.

It results that the judgment of the trial court will be reversed and the case remanded for a new trial.

The costs of the appeal will be paid by the defendant, Buckeye Cotton Oil Company.