HARTFORD ACCIDENT AND INDEMNITY CO. *v.* R. W. HAY.

(*Nashville.* December Term, 1928.)

Opinion filed June 15, 1929.

204

M'cGugin & Evans and W. F. Carpenter, for plaintiff in error.

THOS. W. SCHLATER, JR., and EDWIN A. PRICE, JR., for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a proceeding under the Workmen's Compensation Act (chapter 123 of the Acts of 1919), brought by the employee directly against his employer's insurer, as section 45 of said statute authorizes. An award was made in favor of employee by the trial court and the insurer has appealed.

The employee drove a laundry wagon in the service of the Model Steam Laundry, a corporation doing business at Nashville. The employee, in the course of his duties, was charged with the care of his horse and it was necessary for him to be about the stables of his employer frequently.

While in the stables in August, 1925, the employee noticed a small pimple or blackhead on his person and undertook to squeeze it. The supposed pimple thereafter festered and within a day or two the employee undertook to prick it with a sterilized needle and let out the pus. The place grew worse and the employee went to a doctor for treatment. The doctor diagnosed the trouble as a venereal disease and proceeded to treat it accordingly. No improvement was manifested in the employee's condition under such treatment but on the contrary he grew much worse and it was necessary for him to go to the hospital. Another doctor was called in and he agreed in the diagnosis of the first and the two physicians continued to apply very drastic remedies appropriate to a case of severe venereal affliction. This treatment did no good, the trouble progressed and the petitioner was re-

moved to another hospital and other physicians called in, among them a specialist in skin diseases.

After being removed to the second hospital, the employee was subjected to many tests—for all sorts of venereal diseases, for cancer, and for other maladies and it was found that he was suffering from none of these things. Finally, by a process of elimination, it was determined by the medical men that the petitioner was afflicted with blastomycosis. He was thereupon treated for this disease and began to improve within a few days. The treatment was continued and the employee finally recovered entirely, with the exception of a mutilation which is not compensable under the statute.

It appears from the proof that blastomycosis is a disease that is very rare in man. Few doctors ever see a man so afflicted. It is common, however, in horses. It is a germ disease, the germs breeding around a dark and damp place, such as a stable. A horse may be a host for the germ and be entirely free from the disease itself.

We think the trial judge had abundant evidence before him to warrant the conclusion that the employee was infected with the germ of blastomycosis while handling his horse in and around the stables of the employer. That is to say, we think there was evidence to warrant the finding that the employee's unfortunate plight arose out of and in the course of his employment. It remains to be determined, however, whether the employee's misfortune was an *injury by accident* within the meaning of the Workmen's Compensation Act.

■ Subsection (d) of section 2 of the statute provides that:

"Injury and personal injury shall mean only injury by accident arising out of and in the course of employment, and shall not include a disease in any form except as it shall naturally result from the injury."

Referring to the section just quoted, in *Meade Fiber Corp.* v. *Starnes,* 147 Tenn., 362, the court said:

"It necessarily results therefrom that, to entitle the employee to recover in this case, the disease of which he complains and for which he seeks compensation must have naturally resulted from an injury by accident."

The court then goes on to define the term and says:

"The word *accident* is derived from the Latin *ad cidere,* meaning to fall, a befalling, or not designed, and is usually applied to an event or happening in the nature of a misfortune, casual or fortuitous."

In *Meade Fiber Corp.* v. *Starnes,* the employee was denied an award because he was afflicted with an occupational disease, that is, one naturally resulting from the character of his employment and there was nothing fortuitous or accidental in his affliction.

In *King* v. *Buckeye Cotton Oil Company,* 155 Tenn., 491, a fireman in the performance of his duties suffered heat prostration, from which prostration pneumonia was found to have naturally resulted, producing his death. This court made an award in favor of the widow. The prostration of the fireman was found to be fortuitous, not to be expected, an unusual event or result, and therefore accidental. This conclusion was reached upon the authority of several English cases cited and the court said:

"We do not find anything in our statute, nor in the opinion of *Meade Fiber Corp.* v. *Starnes, supra,* which would exclude from the application of the statute any 'injury by accident,' regardless of whether the injury is made manifest by a condition of the body which medical science terms a diseased condition rather than a traumatic condition. The exclusion is of any disease which

does not amount to an 'injury by accident,' or which does not naturally result from such an injury."

In *McFarland* v. *Massachusetts Bonding & Insurance Company,* 157 Tenn., 254, the court had before it a suit upon an accident policy insuring "against disability or death resulting directly and independently of all other causes, from bodily injury sustained through external, violent and accidental means, suicide, sane or insane not included." A bill was held to state a case which alleged that the complainant was injured by the entry of gonococci germs from some external source with violence sufficient to impact themselves in the tissues of his eyes. It further appeared from the bill that the germs entered the eyes of complainant by means unknown to him and at a time and place unknown to him. It was held that such an infection as this, not being a natural or expected result of a voluntary or intentional act of the insured, was to be deemed an accident within the meaning of the policy.

*McFarland* v. *Massachusetts Bonding & Insurance Company,* and *King* v. *Buckeye Cotton Oil Company,* both lay down that an accidental injury is not necessarily of traumatic origin, strictly speaking. If it be an injury not reasonably to be foreseen, unexpected and fortuitous, it is an accidental injury whether occasioned by heat, germs, or more abrupt or perceptible physical force.

I may say that I bowed to the conclusions reached in these two cases with reluctance. The court, however, has been over the matter twice with like results, and I feel that I must distrust and yield my former notions.

It is to be inferred from the medical testimony offered by the employee that he was infected with blastomycosis while caring for his horse and when his fingers came in contact with the abrasion made by squeezing the pimple. Observations of the trial judge show that he did not con-

sider such of that testimony as tended to prove the ultimate fact and was incompetent.

Whether a particular infection is an accidental injury must be determined on the facts of each case. The facts of the present case bring it fully within the authority of *King* v. *Buckeye Cotton Oil Company* and *McFarland* v. *Massachusetts Bonding & Insurance Company.*

█ It is next insisted by the Insurance Company that this suit is barred by subsection 1, section 31, of the Workmen's Compensation Act providing that actions or proceedings by an injured employee to determine or recover compensation are limited to one year after the occurrence of the injury.

As heretofore stated, the employee first noticed the pimple in August, 1925, and his serious condition developed rapidly thereafter. This suit was not brought until February 24, 1927. The delay in bringing the suit is of course to be explained by the ignorance of the employee and of his physicians for many months of the real nature of his trouble. The trial judge was of opinion that the Insurance Company had waived, or estopped itself to rely on, the one-year statute or on the failure of the employee to give his employer notice of the accident within thirty days of the accident as required by section 23 of the statute. This ruling of the court below seems likewise correct. When the employee's condition became so serious as to necessitate him quiting his work, officers of the employer, previously having sent him to a doctor, had him go to the General Hospital in the fall of 1925. Later the employer sent the employee to another hospital and arranged for the services of the specialists and other physicians who finally diagnosed the trouble correctly and began the proper treatment. After the true nature of the employee's disease was developed and it became prob-

able or possible that the employer would be liable to the employee under the Workmen's Compensation Act, the employer took up the matter of a settlement with the employee with defendant Insurance Company. It is fairly to be inferred from the record that these negotiations began between the employer and the Insurance Company during the summer of 1926, prior to the expiration of the one-year Statute of Limitations.

After investigation of the case, the Insurance Company denied any liability on the ground that the employee had sustained no compensable injury under the statute. Several letters and telegrams appear in the record from the Home Office of defendant company denying liability on this ground alone.

The employer was much dissatisfied with the attitude of the Insurance Company and appears to have remonstrated vigorously with the Nashville agency of that Company. The employer here was conducting a large enterprise and was carrying a policy protecting itself against liability to all its employees under the Workmen's Compensation Statute with defendant. The premium on this policy was upwards of $1400 a year. It appears to have been dated May 25, 1925, and ran for one year. The premiums were payable quarterly.—May 27, August 27, November 27, and February 27—approximately $359.33 each. After the defendant Insurance Company denied liability and about the time the August premium was due, the employer threatened to cancel the policy. The Nashville agency protested such action and in writing urged the employer to have a suit brought to determine the question as to whether the employee had sustained a compensable injury. In this letter from the Nashville agency it was proposed, if such a suit was brought, any question of failure to give notice and all technical questions would

be waived. Finally it appears that with this understanding between the Nashville agency and the employer, the employer continued the insurance.

■ There are numerous authorities holding that an Insurance Company which, with knowledge of the facts, denies liability on a policy for stated reasons will not be permitted thereafter to set up other defenses, after the insured has acted upon the position of the Company as announced and has incurred expenses by bringing suit or otherwise. *Snyder* v. *Mystic Circle,* 122 Tenn., 250.

This court expressed the opinion in *Real Estate Co.* v. *Kyoleum Co.,* 142 Tenn., 295, that this rule should probably not be applied unless the former position was inconsistent with the position adopted after litigation was begun or unless the adverse party was misled or prejudiced by the change of attitude. See, also, to this effect *Canton Cotton Mills* v. *Overall Company,* 149 Tenn., 18.

Passing over any question of prejudice to adverse parties in the case before us, it seems that there was a waiver of defenses, other than the defense of noncompensable injury, and that this waiver was supported by a consideration. The policy here involved was a valuable contract to the Insurance Company. It was a profitable contract, subject to the contingencies of the trade. Naturally the Insurance Company, as well as its Nashville agency, would desire to retain such business. There can be no doubt upon proof that this policy would have been canceled by the employer had it not been for the arrangement proposed by the Nashville agency and heretofore outlined.

But it is urged by the Insurance Company that this agreement exceeded both the real and apparent authority of the Nashville agency. There has been much discussion at the bar and in the briefs upon this question.

The court below found that in making the proposition to the employer, inviting a suit and waiving technical defenses, the Nashville agency "were speaking the mind of the officers of the Insurance Company." We think this finding was warranted.

It is obvious from the record that the Nashville agency was urging the Home Office of the Insurance Company to make a settlement of this claim. On October 27, 1926, the Home Office wrote the Nashville agency: "We have received three wires from your office regarding this case. I think if you will go over the matter fully with your attorneys and with our doctors you will be convinced of the fairness of our position . . . Clearly, under the decisions, this is not a compensable case and we will not pay compensation unless so ordered by the Commission and unless that order is confirmed by the Courts."

Again on October 28, 1926, the Home Office telegraphed the Nashville agency: "Model Laundry Hay wire received. This is not a compensable case and have so instructed our attorneys by letter October 22. If injured thinks he has any rights we should be glad to have matter brought up before Board. See our letter August 26. Our subsequent investigation supports our former opinion."

Mr. J. C. Bradford, Jr., who seems to be at the head of the Nashville agency, testified that before making the written proposition to the employer that technical defenses would be waived if a suit were brought on this claim, he consulted Mr. Cate of the law firm of McGugin, Evans & Cate. This firm is local counsel for defendant Insurance Company. Mr. Bradford further testified, when asked as to his authority for making the proposition just mentioned, said he suggested that way "to determine this liability" because "from the tenor of those

papers there, that seems to be the Company's attitude, that if the Commission ordered it paid they were willing to pay it; that seems to be the way that was."

In the telegram from the Home Office above quoted it was said: "If injured thinks he has any rights we should be glad to have matter brought up before Board." From this it would appear that the Home Office of the Company was fully conversant with the character of negotiations the Nashville agency was making with the employer and approved the plan to have the case tried out on its merits. Mr. Bradford was instructed by the Home Office to consult with the Insurance Company's attorneys and he testified that he did consult with Mr. Cate before making the written proposition to the employer.

So, there is abundant evidence that the course pursued here by Mr. Bradford was directly authorized by responsible officers of the defendant Insurance Company. By this course, we think the defendant Insurance Company waived for a consideration the right to rely on the defense of the Statute of Limitations and of the want of notice.

The employee herein was awarded an allowance of $15 per week for the period of his temporary total disability—ninety-five weeks, and $100 for hospital fees. This allowance was authorized by the statute and by the wages which the employee had been earning. As heretofore stated, the mutilation he suffered was not compensable under the law. During the employee's disability, the employer made repeated contributions to the employee or his wife, out of the employer's petty cash, to keep the family of the employee from want. No exact record of these contributions seems to be now available and the total of such contributions is uncertain. The Insurance Company insists that it is entitled to credit on

any judgment rendered against it for the amount of said contributions of the employer to the employee and his family. We see no basis for this argument. Under its contract, the Insurance Company was obligated to reimburse the employer the amount of the statutory award made the employee herein by a competent tribunal; or the Insurance Company was liable for such an amount directly to the employee if the latter chose to proceed against it directly. If the employer wished to donate to the employee or his family additional sums as a gratuity, that was no concern of the Insurance Company. Such gratuities did not relieve the employer of his statutory liability to the employee and they cannot affect the liability of the Insurance Company.

Complaint is made that the trial judge refused to grant a new trial to permit the introduction of certain medical testimony by the defendant below. The statements that defendant's physicians would have made are put into the record. These physicians are local men. The only excuse offered for not producing their testimony on the trial was that defendant was surprised by the employee's contention that he was infected by squeezing the pimple. It seems to us that the petition plainly avers that the employee's infection originated in this way. There is, therefore, little basis for any claim of surprise.

There is nothing in the proof to justify a surmise that the employee could have contracted blastomycosis otherwise than through his work around his employer's horses and stables, and the testimony of the employee's doctors tends to trace the employee's infection to a definite time and contact.

Some other points are made which do not require discussion, and the judgment below is affirmed.