## JENKINS et al. v. AMERICAN MUT. LIABILITY INS. CO.
### No. 2034.

United States District Court
E. D. Tennessee, N. D.
June 19, 1953.

Hodges & Doughty, Knoxville, and M. G. Goodwin, Lenoir City, Tenn., for plaintiffs.

Clyde W. Key, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is an action under the Workmen's Compensation Law of Tennessee, Code, § 6851 et seq., by Mrs. Annie Gertrude Jenkins and Charles Jenkins, widow and minor son, respectively, of James R. Jenkins, Sr., deceased, who sue by next friend, Harrison J. Jenkins, Mrs. Jenkins being a non compos mentis and Charles Jenkins being only 14 years of age. It is stipulated that both plaintiffs were dependents of the deceased on the day of his death.

The deceased was an employee of defendant's insured, George W. Reagan Company, Inc., which was engaged in constructing a school building at Lenoir City, Tennessee. While working on this job on July 29, 1952, he became sick. His sickness became noticeable about 11:00 a.m., possibly sooner. Shortly after noon his condition was brought to the attention of his foreman, who took him to the office of Dr. Hughes Johnson in Lenoir City. He died there between 1:00 and 1:30 of that afternoon. Doctors Johnson and Baker, the only physicians who testified in the case, were of the opinion that death resulted from a coronary occlusion. No autopsy was performed, hence the opinion was neither verified nor rebutted. Dr. Johnson had not treated deceased prior to this occasion. Dr. Baker did not see deceased either in his lifetime or after his death.

The complaint alleges that deceased "suffered either a sunstroke or heat exhaustion" and that "he died from a heart condition which was aggravated by either his overexertion or becoming over-heated in his work." It is further alleged that the death "was due to an injury by accident that arose out of and in the course of" the deceased's employment.

Defendant's answer denies that deceased suffered a sunstroke or heat exhaustion or that his death was due to an injury by accident arising out of or in the course of his employment. On the contrary, it is defendant's theory that the death resulted from a diseased heart condition which had no connection with deceased's employment.

Since the trial, defendant contends that plaintiffs have failed to show by a preponderance of the evidence that the death was either caused or hastened by a sunstroke or heat exhaustion and that, therefore, there was no causal connection between deceased's employment and his death.

At a pre-trial conference it was agreed by the parties that there were two issues in the case. Those issues are restated as follows:

1. Did deceased sustain an accidental injury arising out of and in the course of his employment that caused his death?

2. Did deceased while at work sustain an accidental injury which aggravated a pre-existing heart condition and hastened his death?

The deceased at the time of his death was 63 years of age and had worked as a laborer, farmer and a boiler-fireman during his entire adult lifetime. Practically all of his work was that of a laborer.

So far as the record discloses, deceased was unaware that he had an afflicted heart. On the Sunday prior to his death on Tuesday his son, James R. Jenkins, Jr., came home from the Army. He had been in the Army about two and one-half years. On Monday deceased and James, Jr., went to Knoxville where James purchased a car. On Sunday and Monday the deceased appeared to be in good health. So far as his family and other acquaintances knew, he was in good health up until the day of his death. James, Jr., took him to work on that day, leaving home with him about 6:50 a.m. He left him at his place of work at about 7:45 a.m. At that time nothing appeared to be wrong with him.

It was stipulated at the trial that the temperature on July 27th ranged from 99 degrees at 3:00 p.m. to 101 degrees at 6:00 p.m.; that on the 28th it ranged from 100 degrees at 1:00 p.m. to 102 degrees at 6:00 p.m.; that on the fatal 29th it ranged from 79 degrees at 7:00 a.m. to 99 degrees at 1:00 p.m. Other heat factors, such as shade, wind and ventilation, are not shown with respect to July 27th and 28th. However, as will later appear herein, conditions were highly unfavorable to deceased on the 29th.

During the morning hours of the 29th, the deceased's work consisted of carrying scrap lumber and moving things out of the way of painters. He went to lunch about 11:30 a.m., at which time he complained of being awfully hot. Shortly before lunch he was observed to be in a distressed condition, in that he acted like he was going to vomit. He did not eat all of his lunch. He returned to work about noon. On resumption of work in the afternoon, he did fine grading preparatory to pouring concrete. In doing this grading, he used a pick and a shovel. He also hauled some dirt in a wheelbarrow. The closest shade was about 150 feet away. He worked in a corner at a place where he received the direct rays of the sun, as well as heat from a brick wall near which he was located. In this situation he became wet with sweat, looked awfully hot, and a fellow-worker "could see him weakening" and could tell he was getting too hot. About 1:00 p.m. the foreman was advised to look about the deceased. This the foreman did. He found the distressed employee very hot and assisted him to a shade, where he vomited. Deceased told the foreman he wanted to home. The foreman, instead, took him in a car in search of a doctor. At that time he was still wet with sweat and looking very hot. On the way to the doctor's office he was sweating very much. He began, also, to complain of pain in his arms and chest. He did not become unconscious until after he had reached the doctor's office, and not until a few minutes before his death, which occurred very soon after his arrival. The doctor found him in a state of shock, with extremely low blood pressure, and able to breathe only with great difficulty. It was apparent from the first moments that he was beyond help.

It is explained by the medical testimony that heart failure may result from formation of a blood clot in the coronary artery and that such, the doctors were confident, was the cause of the employee's death in this case. The two doctors who testified were in agreement that overheating, as well as overexertion, worry, and many other factors, lower the circulation of the blood through the lumen either by constricting the artery or slowing down the flow of blood through the artery. If the flow of blood is sufficiently impeded or slowed down, a blood clot will form in the vessel. Dr. Johnson stated that in his opinion, due

252

to the deposit of cholesterol in the lumen of the deceased's coronary artery, overheating of the deceased was the direct cause of his death. Dr. Baker stated it to be his opinion that exposure to the extreme heat produced in deceased a condition of shock which lowered his blood pressure, aggravated his heart condition, and thereby hastened his death.

From the evidence, the Court has no doubt that the employee's exertion in the intense heat caused his death either directly or by aggravation of a coronary disease or defect. The question remains as to whether death resulted from an accident within the purview of the compensation law.

As above stated, the complaint alleges that the employee suffered either a sunstroke or heat exhaustion.

In response to cross-examination, Dr. Baker stated a number of conditions that precede or attend overheating, among them being unconsciousness or semi-consciousness; dry, hot skin, or skin moist, but not perspiring; white or colorless surface, and fatigue. However, common experience shows that overheating may manifest itself in any of a number of ways, and courts of this state. use, as related terms, heat prostration, sunstroke, or heat exhaustion, all as forms of overheating. See Moss Tie Co. v. Rollins, 191 Tenn. 577, 580, 235 S.W. 2d 585. Symptomatic conditions stated by Dr. Baker are those in the main descriptive of sunstroke, not of other forms of overheating. Symptoms exhibited by the deceased, his ashen color, extreme perspiration, and vomiting are descriptive of heat prostration. See Dorland's Medical Dictionary, 18 ed., pp. 514 (exhaustion, heat) and 1374 (sunstroke); also, the Merck Manual, 8 ed., pp. 1116 to 1119. Cf. Milstead v. Kaylor, 186 Tenn. 642, 212 S.W.2d 610.

In Tennessee, death caused by heat prostration, sunstroke or heat exhaustion is compensable. Patten Hotel Co. v. Milner, 145 Tenn. 632, 238 S.W. 75; King v. Buckeye Cotton Oil Co., 155 Tenn. 491, 296 S.W. 3, 53 A.L.R. 1086; Milstead v. Kaylor, supra. The inference to be drawn from the cases so holding is, that heat prostration, sunstroke or heat exhaustion is an injury by accident. It is so reasoned in King v. Buckeye Cotton Oil Co., supra, where, 155 Tenn. at page 497, 296 S.W. at page 5, 53 A.L.R. 1086, the court said: "Whether the condition [heat prostration] be caused solely and entirely by the excessive temperature of the room or place in which the employee is at work, or whether the excessive temperature of the place and the present physical condition of the workman combine to produce the result, there is an element of sudden, unforeseen, and unexpected casualty and misfortune in the result."

It is not necessary in a workmen's compensation case that the accidental injury be established as the direct and proximate cause of the death. The death is compensable if a causal connection is shown. By causal connection "is meant not proximate cause as used in the law of negligence, but cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee while doing his work." Tapp v. Tapp, 192 Tenn. 1, 6, 236 S.W.2d 977, 979.

In McCann Steel Co. v. Carney, 192 Tenn. 94, at page 101, 237 S.W.2d 942, at page 945, the court said: "Schneider's Workmen's Compensation has an excellent statement of law on the question of causation which we are pleased to quote with approval. It reads as follows: 'The accident does not have to be one that would injure a person of ordinary intelligence or ordinary health or ordinary strength. It is sufficient if it injure the employee in the condition in which he is working when injured. If frail, mentally defective, or is carrying a disease—latent or active—and is injured by an accident arising out of and in the course of the employment, the accident and not the infirmity is the proximate cause of the injury. The injury would not have occurred if the accident had not happened, neither would it have occurred if the employee had been a normal person. But the infirmity is a passive or dormant agency and would not have caused the disability or death without assistance. The accident, on the other hand, is an active agency and its adverse effects and cause are immediate

and generally noticeable. And it is the proximate cause of those disabilities which it adds to the employee's previous infirmities, and which he would not have if the accident had not occurred.' "

In the language just quoted may be found the principle that is applicable here. The infirmity of the workmen had been, and was, a passive or dormant agency. In all probability it would have caused his death at some indefinite date. According to the proof, it would not have caused his death at the time it did cause it, had it not had the assistance of the accidental injury of overheating, or heat exhaustion. The Court finds that deceased suffered heat prostration or exhaustion, that this was an accidental injury arising out of and in the course of his employment, that it aggravated a latent heart affliction and hastened his death. The result is that the death is compensable.

Let an appropriate order be prepared.