T. H. Mastin & Company et al.

*v.*

Herman L. Loveday.

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

590

GODDARD & GAMBLE, Maryville, for respondent, plaintiff in error.

OGLE & OGLE, Sevierville, for petitioner, defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Loveday received an injury admittedly compensable under the Workmen's Compensation Statute. T.C.A. sec.

50-901 et seq. The accident occurred in Blount County where his employer maintained an office. Loveday brought suit in Sevier County where he, Loveday, resided. He sued only the insurer, a non-resident corporation, with no designated agent for acceptance of service in Tennessee other than the State Commissioner of Insurance. The subpoena was so served. The insurer, by plea in abatement, asserted that the venue "is in Blount County and not Sevier County, Tennessee". The Trial Judge overruled this plea and, after the hearing of evidence, awarded compensation. The insurer has appealed.

In support of its plea to the jurisdiction the insurer relies upon *Brown v. Stone & Webster Engineering Corporation,* 181 Tenn. 293, 181 S.W.2d 148. In that case the accident occurred in Anderson County, but the injured employee brought suit in the county of his residence, as in the instant case. The remaining situation, however, in *Brown v. Stone & Webster* differs from the situation in the instant case in the following respects:—(1) the insurer in *Brown v. Stone & Webster* had designated a resident agent in Knox County on whom process could be served. No resident agent had been designated by the insurer in the instant case; (2) the employee in *Brown v. Stone & Webster Eng. Corp.* likewise joined as co-defendant his employer which maintained an office in the county where the accident occurred. But the employer in the instant case was not sued.

So, the question in the case at bar is whether an injured employee may, under our Workmen's Compensation Statute, maintain suit for his injuries in the county of his residence, the accident having happened in some

other county, against his employer's insurer alone, that insurer being a non-resident of Tennessee, maintaining no office in Tennessee and with no resident agent designated in Tennessee on whom process could be served other than the State Commissioner of Insurance, upon whom process issued, and was served, from the Circuit Court of the employee's residence.

 The injured employee may bring the suit directly against the employee's insurer alone. He is not required to also sue the employer. Section 50-1209, T.C.A.; *Hartford Accident & Indemnity Co. v. Hay,* 159 Tenn. 202, 205, 17 S.W. 2d 904.

Section 50-1018, T.C.A. expressly authorizes the insured employee, if he so elects, to bring his suit in the county in which he resides, though a different county from that in which the accident occurred. But "the defendant *must be servable with process in*" that County, (Emphasis supplied) *Flowers v. Aetna Cas. & Surety Co.,* 186 Tenn. 603, 606-607, 212 S.W.2d 595, 596, meaning, legally "servable".

The statute makes the State Commissioner of Insurance the true and lawful attorney of a non-resident Insurance Company maintaining no office in this State, and provides that "process issued by any court of record in this state, and served upon such commissioner by the proper officer * * * shall be deemed a sufficient process on said company". Section 56-308, T.C.A. and 56-320, T.C.A.

This "insurance commissioner, as agent by appointment of a foreign insurance company, is agent for the whole state, on whom process, running from any county,

may be served without regard to the location of the company's principal office or place of business or of the place where the cause of action arose." *Cartmell v. Mechanics' Ins. Co.,* 167 Tenn. 498, 500, 71 S.W.2d 688, 689.

█ It follows, we think, that the non-resident insurer in the instant case was legally servable with process issued from the Circuit Court of Sevier County, that being the county wherein the injured employee resided; therefore, that the plea in abatement to the jurisdiction of that Court was properly overruled.

During the course of Loveday's work something happened to an air hose while in action, and with which Loveday was working at the time. The result was a ruptured left ear drum.

█ The Judge found that he "has lost the use of the one ear * * * the hearing has been affected to such an extent that in so far as his work is concerned it will be of no use to him;" that is, that the hearing in this ear for all practical purposes is completely gone.

There is no express provision for the loss of hearing of one ear. The list of scheduled injuries provides compensation for a period of one hundred and fifty (150) weeks "for the complete permanent loss of hearing in both ears". Section 50-1007, T.C.A. It was conceded that for the complete permanent loss of hearing in one ear an injured employee would be entitled to $26 per week for seventy-five (75) weeks. The Judge so allowed, and the insurer insists that there is no evidence to support a finding of a total loss of hearing. He concedes some loss.

█ The Court also found that Loveday suffered a temporary total disability of seventeen (17) weeks. The

insurer insists that the evidence will support an allowance for only six (6) weeks.

There is no abundance of evidence upon either of these questions of fact. The insistence of the insurer with reference to each is not without some justification. We think, however, that the finding of the Judge as to each is supported by some material evidence; hence, the insistences of the insurer with reference thereto will have to be rejected.

It developed during the course of the Trial that the insurer had paid Loveday compensation for seventeen (17) consecutive weeks immediately following the injury. When a colloquy arose about this during the course of the trial the attorney for the insurer made the statement that there has "never been a word or agreement for any permanent disability". Though Loveday returned to them after six weeks and worked an hour before being let off by the employer on the ground of lack of work, probably, this employer continued to pay him for eleven (11) more weeks. It was for a period of approximately seventeen (17) weeks that Loveday went right frequently to the ear specialist for treatment.

This specialist testified that Loveday had a ruptured left ear drum which became infected by some article being blown in by the air hose at the time of the accident, and that the infection failed to yield to treatment. He says that they tried "to salvage all we could of a blasted ear, you might say". He thought that the injury was partial, though permanent. A general practitioner attending Loveday said that he could not hear "enough to do any good so far as hearing what I said", nor hear a

watch tick. He thought that the injury was partial, though permanent.

Loveday testified that the "whole side of my head hurts"; that he has not been able to work since the accident without pain and suffering, and when he does work has to quit and lie down three or four times during the work day. He seems to have lost his physical balance and equilibrium, and is dizzy, and cannot, he says, hear a watch tick when it is "put right up against that ear".

Judgment affirmed with costs accordingly.