Maryville Lumber Company, Petitioner,

*v.*

Paul Robinson, Respondent.

391 S.W.2d 624.

(*Knoxville*, September Term, 1964.)

(May Session, 1965.)

Opinion filed June 2, 1965.

ROBERT R. CAMPBELL, HODGES, DOUGHTY & CARSON, Knoxville, for petitioner.

JAMES HOWARD JARVIS, O'NEIL, JARVIS, PARKER & WILLIAMSON, Knoxville, for respondent.

MR. JUSTICE WHITE delivered the opinion of the Court.

Dr. Paul Robinson recovered a judgment against Maryville Lumber Company in the amount of $1,958.87 in the General Sessions Court of Knox County. The defendant appealed to the Circuit Court wherein the trial judge, sitting without the intervention of a jury, found in favor of the defendant and dismissed the case.

An appeal in error was perfected to the Court of Appeals and that court reversed and entered a judgment for Dr. Robinson in the amount sued for, $1,958.87. Upon proper application we granted certiorari and the case has been argued at the bar of this Court.

The facts are that on May 5, 1962, the Maryville Lumber Company was in the process of building a new dwelling house for Robinson. On the afternoon of that date certain employees of the Petitioner, Maryville Lumber Company, were finishing the hardwood floors in the second story area of the house and were using an inflammable floor sealer. While they were so engaged a fire occurred, resulting in damage to this area of the house in the dollar amount aforesaid.

The testimony of Dr. Robinson is of little value in determining the issues here to be decided, because he was not present at the time of the fire, but did arrive shortly thereafter. He did state, however, that said employees told him they were applying the floor sealer when the fire suddenly occurred; he had no knowledge of the cause of the fire.

Other witnesses for the respondent, Robinson, testified as to the inflammable nature of the floor sealer, that is, that any spark would ignite the sealer and the witness, Sentell, an expert, testified that persons applying the sealer should not smoke in the area of application. They should keep the floor and area of work free of rags and other material used in the application process. Proper ventilation, in his opinion, is of great importance. Sentell always used a non-sparking type of ventilation fan when applying the sealer, according to his testimony.

The petitioner's employees, Bob Cooper and his son, Bobby Cooper, testified they were in the process of applying the floor sealer at the time of the fire. The Coopers had sanded these hardwood floors in the morning hours, and started applying the sealer at approximately two o'clock the same afternoon. Prior to commencing the application of the floor sealer, both Coopers stated they had opened all of the upstairs windows, and there was a good breeze blowing through the upstairs of the house. Further, there were no rags, trash, or refuse of any sort on the floor, nor were any other items of equipment on the floor. At the moment of the fire, they were applying the floor sealer by the use of a five inch paint brush, and the fire suddenly started at the north or street side of the room in the area of a furnace duct and traveled in a split second across and over the entire room.

The label on the can containing the sealer read: "CAUTION INFLAMMABLE MIXTURE. DO NOT USE NEAR FIRE OR FLAME. AVOID STRIKING OR LIGHTING MATCHES. USE IN A WELL VENTILATED AREA." Both of the Coopers admit knowledge of the warning on the can, but stated that no open fires or flames were around the sealer, that no one struck a match in the area, and that the room was well ventilated at all times.

The last, and perhaps most significant, witness called was Eugene McDonald, a plumber, who was working in the basement of the house when the fire occurred. McDonald was an employee of a plumbing sub-contractor on the job, not an employee of the defendant lumber company.

McDonald testified that he was working in the basement of the house installing a cold water line. Approximately five minutes before the fire occurred, he accidentally allowed one of the water pipes to come into contact with the furnace duct work, thereby producing an electrical shock to him. Soon thereafter a plumber who was working with McDonald allowed the same water pipe to come in contact with the furnace duct. When it touched the duct, he turned it loose, dropping it, and it fell against the duct. McDonald said that at this moment he heard a hissing noise which sounded like electric current jumping from metal to metal. Immediately after this occurred, McDonald states he heard the Coopers running from the upstairs of the house shouting "Fire".

The trial judge dismissed the action for want of actionable negligence. The Court of Appeals reversed on the grounds that the defendant was negligent in (1) failing to provide a fan or some other means of ventilation and

circulation, and (2) permitting a plumber and other workmen to be in the house at the time the sealer was being applied.

The basic question which must be decided by this Court is whether the clear preponderance of the evidence 'is against the findings and the judgment of the trial court. In so doing, we have the power and the duty to consider the entire record and determine where the preponderance of evidence lies as there has been no concurrence of finding on questions of evidence by the trial court and the Court of Appeals.

T.C.A. sec. 27-303 provides that the decision of a trial judge of a court of record, sitting without the intervention of a jury, shall be presumed to be correct upon appeal unless the preponderance of the evidence is otherwise.

■ Where the trial judge and the Court of Appeals differ in their respective findings and conclusion of facts upon the oral evidence, this Court is obligated to review such evidence *de novo,* but with the presumption that the trial court's decision was correct unless the evidence preponderates against it. Under such circumstances the record is then open to examination *de novo* in this Court. *Folk v. Folk,* 210 Tenn. 367, 355 S.W.2d 634, 357 S.W.2d 828 (1962) ; *Miller v. Kendrick,* 153 Tenn. 596, 285 S.W. 51 (1925); *Cooley v. East & West Ins. Co.,* 166 Tenn. 405, 61 S.W.2d 656 (1933) ; *Joest v. John A. Denie's Sons Co.,* 174 Tenn. 410, 126 S.W.2d 312 (1939).

■ Further, even where the trial court and the Court of Appeals concur in their findings as to the evidence, we may review the opinion of the Court of Appeals and the record of the case to determine the validity and ac-

curacy of the conclusions of law made by the Court of
Appeals based upon the findings of fact. *Overbey v. Po-
teat,* 206 Tenn. 146, 332 S.W.2d 197 (1960); *Insurance
Co. of North America v. East Tennessee, V & G. Rail-
road,* 97 Tenn. 326, 37 S.W. 225 (1896); *Martin v. Mc-
Crary,* 115 Tenn. 316, 89 S.W. 324, 1 L.R.A.,N.S., 530
(1905); *Moore v. Cincinnati, N. O. & T. P. Ry. Co.,* 148
Tenn. 561, 256 S.W. 876 (1923); *King v. Buckeye Cotton
Oil Co.,* 155 Tenn. 491, 296 S.W. 3, 53 A.L.R. 1086 (1927).

In view of these authorities we have carefully examined
the record to determine (1) what acts or breaches of
duty, if any, were committed by the petitioner which
would render it liable to Robinson for damages; and (2)
whether these acts, if any, were the proximate cause of
the accident and the resulting damages.

The trial judge concluded there was no lack of ordinary
care on the part of the contractor's employees, and
accordingly dismissed the suit. The Court of Appeals,
however, held that a preponderance of the evidence
showed that the petitioner's contractor was negligent and
such negligence was the proximate cause of the fire and
the damages.

The Court of Appeals, in its opinion, stated that it was
the duty of the petitioner, Maryville Lumber Company
to use great care in the application of such a highly in-
flammable solution. Although there was testimony that
the petitioner proceeded in the customary way in apply-
ing the sealer, the Court of Appeals held that the "cus-
tomary way of doing a thing may be a negligent way."
With this statement we agree.

Further, the Court of Appeals held that

\* \* \* the failure of the defendant to provide a fan or some other means of ventilation and circulation, also the permitting of the plumber or other workmen to be in the house at the time this sealer was being applied, to be negligence in itself.

With this statement we do not agree.

We are not convinced that a preponderance of the evidence is against the findings and judgment of the trial court. As we view the facts, the defendant's employees acted reasonably under the circumstances in accomplishing the tasks which, of necessity, had to be done to render the house useful for occupancy in accordance with contract.

It is undeniable that the treating of the newly sanded floor with a sealer, highly inflammable in nature, was a necessary and contracted for item in the completion of the plaintiff's house. At the same time we are equally certain that the defendant's employees took all the precautions which were reasonably necessary under the circumstances and their actions were in conformity with precautions taken by other workmen performing the same or similar tasks under like or similar circumstances.

In our opinion the following testimony shows that petitioner's employees did follow the safety measure prescribed on the container as aforesaid:.

Q. Mr. Cooper, were there any open fires or flames in the upstairs area of that house?

A. No sir.

Q. Were there at any time while you and your father were working along there, were there any matches at any time, did you or anyone else strike any matches in that area?

A. No sir.

     \*     \*     \*     \*     \*     \*

Q. Now when you say you opened all the windows do you mean all the windows in that one room or all the windows upstairs?

A. All the windows upstairs.

Q. After you opened the windows did you notice whether there was a breeze blowing through the upstairs or not?

A. There was.

The witness Sentell called in behalf of the respondent, Robinson, said that a non-sparking type of ventilating fan is commonly used when applying an inflammable mixture such as floor sealer. But Sentell does not say that the only reasonable standard of safety would be to require, in all situations, the use of a non-sparking type fan. He merely stated that he used this type fan in his business.

The end sought, as we see it, is the proper ventilation of the room and there is testimony in the record that all the windows upstairs were open at the top and bottom, and that there was a breeze blowing through the area. We think this testimony is sufficient to have warranted the trial court in concluding that the house was properly ventilated, and, therefore, the petitioner's employees were guilty of no negligent act as concerns the ventilation of the room. It may be that under certain circumstances a fan would be necessary where there are no or only a few windows, etc. However, we are not convinced that a preponderance of the proof shows that such fan was necessary in this case.

Another act or breach of duty which the Court of Appeals terms "negligence in itself" is the "permitting of the plumber and other workmen to be in the house at the time the sealer was being applied." We think that to hold the petitioner liable on such grounds would be wholly unrealistic in light of modern practices in the construction industry.

No doubt, in the construction of buildings, homes, etc., there are many jobs which must be done involving a certain amount of danger or risk. To hold that all other workers must cease work and leave the construction area during these periods would be a heavy, if not unnecessary, burden upon the construction business.

The sealing of the floor was a job that was necessary in the completion of the building. The Coopers were putting the sealer on the floor in the upstairs of the house, while the plumbers were working in the basement. We think it would be unreasonable to hold that the Coopers should have stopped the plumbers merely because they were applying sealer on the second floor.

In our opinion there was no way the Coopers could have reasonably foreseen that the fire would occur by the short-circuiting of an electrical outlet in the basement by a pipe which a plumber dropped accidently while carrying out his duties as an independent contractor in installing the plumbing. The electrical work was done by an independent contractor also.

Thus, it is our opinion that the petitioner's employees were guilty of no negligent act or acts which render Maryville Lumber Company liable for the damages in this case.

The judgment of the Court of Appeals is reversed and that of the Circuit Court affirmed.

BURNETT, CHIEF JUSTICE, and DYER, HOLMES and CHATTIN, JUSTICES, concur.