SAM STEVERSON, JR., Plaintiff in Error,

*v.*

E. I. DU PONT DE NEMOURS COMPANY, Defendant in Error.

(*Nashville,* December Term, 1960.)

Opinion filed April 5, 1961.

RONALD M. HARKAVY, Memphis, for plaintiff in error.

WILLIAM F. KIRSH, JR., SHEPHERD, HEISKELL, WILLIAMS, BEAL & WALL, Memphis, of counsel, for defendant in error.

Mr. Justice Swepston delivered the opinion of the Court.

This is a Workmen's Compensation case in which the plaintiff in error Sam Steverson, Jr., hereinafter called petitioner, claims compensation for permanent and total disability by reason of exposure to inhalation of chlorine gas. After hearing a large volume of evidence, the trial judge denied any recovery to the petitioner, who has appealed and assigned two errors: (1) the verdict is unsupported by any material evidence; and (2) the verdict is contrary to the law and the evidence.

It seems to be the insistence of the petitioner that there was no conflict in the material evidence and, therefore, it became a question of law for the court on appeal to decide in accordance with the rule laid down in *Moore et al. v. Cincinnati, N. O. & T. P. Ry. Co.,* 148 Tenn. 561, 256 S.W. 876; and *King v. Buckeye Cotton Oil Co.,* 155 Tenn. 491, 296 S.W. 3, 53 A.L.R. 1086.

Also, that the facts of this case fall squarely within *Lyons v. Holston Defense Corp.,* D.C., 142 F.Supp. 848.

In this latter case, *Lyons v. Holston Defense Corporation,* the experts were sure that benzol poisoning was not the cause of the kidney trouble but they were unable to see what was the cause. As will hereinafter appear, that is not the situation in this case.

On the morning of August 20, 1959, between eight and nine o'clock the petitioner and a fellow-laborer, Witherspoon, were engaged in cutting grass on the premises of the employer out in the open, of course. About 85 feet from where they were working was a pump through which

chlorine gas was passing and from which on account of a leaky valve, a slight amount of chlorine escaped into the open air. The amount was so light that the two men who were called to locate the reported escape of the gas were unable to smell it and were only able to locate it by the use of a chemical spray adapted to such use. Although the wind was not blowing the gas in the direction of the petitioner and Witherspoon, and although Witherspoon suffered no disturbing effects from it, petitioner began to have a violent attack of coughing and when he was taken to the dispensary for treatment he stated that he had smelled several whiffs of chlorine which made him ill. The Company doctor, Richard J. Wehs, concluded that petitioner was suffering from an attack of asthma and placed him under an oxygen tent and gave him adrenalin to which he responded ''very dramatically'' more so than would have been the case had his difficulty resulted from chlorine exposure, according to this doctor's testimony. Later on this doctor called in another Company doctor, C. B. Scott, who examined petitioner and concurred in the diagnosis that petitioner was suffering from an attack of bronchial asthma, because the characteristic signs of a chlorine exposure were absent.

Dr. Wehs, before he went home, told petitioner that if he had any trouble during the night of August 20, arrangements had been made to send him to the hospital but no call was made and next day petitioner showed up for work. He examined petitioner every day for about a week and at the end of that time the doctor found no symptoms in the lung of any chlorine effects. Petitioner was placed on duty in another part of the plant where there was no danger of exposure to chlorine and was instructed to stay within that area. On account of the

violation of these instructions repeatedly he was discharged on September 9, 1959.

Steverson testified that he has had several attacks since then and that he is unable to do any work, since he is trained only as a laborer and physical exertion brings on severe coughing attacks.

The trial judge heard a considerable amount of medical testimony, as well as the testimony of petitioner and members of his family and friends. At the conclusion of same he filed full findings of fact which consist of four pages of legal cap, single spaced, which is not necessary to quote and would unduly encumber this opinion to do so. At the risk of over simplification, we think that the questions to be resolved by him and which he did resolve are: (1) whether the petitioner suffered exposure to a sufficient quantity of chlorine gas to cause a chlorine burn in the lungs, which would be a permanent injury, or was the exposure so slight that it did not cause such damage but simply precipitated an attack of asthma which resulted in no permanent effects; and (2) did the petitioner have an asthmatic condition before this episode on August 20, 1959.

The court answered both of these questions adversely to the petitioner and there is not only material evidence to sustain his findings but the evidence preponderates in favor of such finding.

There is no disagreement among the medical men that an exposure to a sufficient volume of chlorine gas will cause and be evidenced by a burning of the eyes, followed by a burning of the nose, a runny rose, some sneezing and then tightness in the respiratory tract. Also, the drugs and the treatment to be administered in the two instances,

i. e., asthmatic attack or sufficient exposure to chlorine are entirely at variance with one another in several important particulars, so much so that the administration of the wrong drugs might prove very disastrous. Also the court found and there is much evidence to support it, that there are no permanent after-effects to exposure to chlorine—one either recovers completely or dies.

The court also found and there is ample evidence to support same, that, while an exposure to chlorine may precipitate an attack of asthma, it does not cause asthma and the subject person will have no subsequent attacks from the same exposure but only from a new exposure; that is, an exposure causes no recurrent attacks.

As to the second question, Dr. Wehs testified that petitioner told him that he had been going to Dr. Wicke for approximately two years for treatment of a cold before this present episode. Dr. Wehs testified (R. 90) as follows:

"The Witness: Yes sir, and I said, 'Yes, you do have asthma'. And he says, 'You mean that this wheezing and shortness of breath and all of that sort of stuff is asthma?'. And I said, 'Yes, it is.' He says, 'Well, I have been going to my doctor for the past two years for treatment of that condition, and my doctor called that a cold' ".

In conclusion, therefore, this case presents only the usual case of the findings of the trial court supported by material evidence and by no means are the authorities cited by counsel for plaintiff in error applicable.

The judgment below is affirmed.

All concur.