279 So.2d 293 (1973)
Kenneth R. REYNOLDS, Petitioner, Cross-Respondent,
v.
WHITNEY TANK LINES and Continental Insurance Company, Respondents and Cross-Petitioners, and
Michigan Mutual Insurance Company and Industrial Relations Commission, Respondents.
No. 43166.
Supreme Court of Florida.
June 13, 1973.
*294 Joseph E. Melendi, of Barrs, Melendi & Williamson, Tampa, for petitioner, cross-respondent.
W.S. Crumbley, of Shackleford, Farrior, Stallings & Evans, Tampa, for Michigan Mutual Ins. Co., respondents, and Whitney Tank Lines, respondent and cross-petitioner.
Richard G. Davis, of Rose & Davis, Tampa, for Continental Ins. Co., respondent and cross-petitioner.
McCAIN, Justice.
This case is before us on claimant's petition and the employer carrier's cross-petition for writ of certiorari to review an order of the Industrial Relations Commission reversing the compensation award of the Judge of Industrial Claims. We have jurisdiction pursuant to Fla. Const., Article V, Section 3(b)(3) (1973), F.S.A.
Claimant Reynolds, a 45 year-old truck driver, was injured on December 23, 1969 when he fell off his tractor trailer, landing on his left side and rupturing his spleen. Surgery involving spleen removal was performed and claimant was discharged from the hospital on December 31, 1969. He returned to work on February 2, 1970 and continued working on a regular basis until his second accident on December 12, 1970.
On the latter date claimant again fell out of his truck, landing on his left side and suffering bruises. He continued working intermittently for a three week period, complaining of pain and shortness of breath, until he was admitted to the hospital on February 3, 1971. Shortly after entering the hospital claimant suffered a myocardial infarction.
The basic dispute in the case concerns the question of causal relationship between the second accident and the heart attack. There was some testimony (primarily that of claimant and his wife) that after the first accident claimant became nervous and third and had trouble performing his tasks at work with his former efficiency. Claimant also testified that during the period between the accidents his left side was painful and disturbing to him. After the *295 second accident, he became increasingly nervous, began to suffer shortness of breath and eventually suffered the myocardial infarction described above.
The JIC determined that the infarction was causally related to the second accident and awarded compensation. In so doing, he relied primarily on the testimony and medical report of Dr. Armstrong, an internist with a specialty in pulmonary diseases, who treated claimant after the second accident and recommended his admission to the hospital. In his report Dr. Armstrong stated:
"In summary, we have here a 45 year old man who suffered a work related injury requiring surgery of a major nature. He continued to have pain and discomfort, and missed work on several occasions because of it. The second fall in December, 1970 was additional trauma to him and I feel that there is absolute medical certainty that this triggered the acute phase of his respiratory disease as it is a well known fact that the wheezing associated with obstructive pulmonary disease is frequently emotionally induced. It is equally well known that heart attacks are stress related. The time of his myocardial infarct would put it somewhere in the first 24 hours of his hospitalization."
Dr. Armstrong also testified at the hearing before the JIC. Inter alia, he said at that time:
"Q All right. Do you have an opinion, sir, as to whether or not the industrial accident of 1969 and the industrial accident of 1970, and their sequelae, contributed to any extent to the manifestation of the obstructive pulmonary disorder you found and diagnosed in January and/or February of 1971?
"A I felt that there was a connection between these accidents and his problem.
"Q In reference to the pulmonary disorder, would you tell the Court the reasons why you concluded that there is a connection.
"A The patient had many, many months of difficulty with pain, and the anxiety and stress therefrom. I felt that the second accident in particular  I'll go back to the other in a moment  the second accident, in particular, triggered the great deal of this problem in that he began to have wheezing which is an outward evidence to you, me, or anyone in the room, that a person is having obstructive problems with his lungs; that is, the bronchial tubes are closing down. These bronchial tubes were closing down because of various things: infection, emotion, smoking, an allergy, to complete the picture there. So that I felt that the stress that this man had come under, particularly in his second fall, triggered more of these wheezing responses, and that this is what tipped him over into having overt manifestations of the obstructive disease."
The Full Commission reversed the award of compensation concluding that the causal relationship between the accident and the heart attack was not established by competent, substantial evidence. In pertinent part, the Commission held:
"We are compelled to agree with the appellant ... that the evidence is neither competent, substantial nor in accordance with logic and reason to support a causal relation, particularly in light of the testimony of Dr. Armstrong who based his opinion upon a multitude of factors. He did not unequivocably testify that within a reasonable medical probability that either of the accidents caused the myocardial infarction.
......
"The only evidence in support of the Judge of Industrial Claims' ruling in the *296 instant case was that of Dr. Armstrong who merely attributed claimant's myocardial infarction to both his prior accidents and named other causative factors. This is contrary to the ruling in the above cited cases. [The cases referred to are a series of Supreme Court decisions in workmen's compensation cases discussing proximate cause and reasonable medical probability.]"
We disagree. At least two kinds of compensable heart attack situations appear in the case law interpreting Chapter 440. First are those situations in which the claimant is injured in an identifiable accident which results, either immediately or subsequently, in a heart attack. In those situations there is no requirement that claimant have been under unusual strain or over-exertion at the time of the heart attack; the only question (aside from compensability of the initial accident) is whether the heart attack is causally related to the accident. Representative cases include Herrin Transportation Company v. Cothren, 180 So.2d 338 (Fla. 1965) and Sosenko v. American Airmotive Corporation, 156 So.2d 489 (Fla. 1963).
The second category comprises those cases where there is no identifiable or "literal" accident, but as a result of unusual stress and strain on the job the claimant suffers a heart attack. The leading case delineating the elements necessary for recovery in this type situation is Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961), wherein we held on rehearing:
"When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing."
We clarified the Victor Wine decision in Sosenko, supra, observing:
"It is clear from the facts of the Victor Wine case that the rule adopted therein involved only a determination as to whether an injury to the claimant was compensable under the workmen's compensation act in the first instance. Our holding in that case did not necessarily carry with it an answer to the question of whether compensation would be extended to a subsequent injury related in some way to a primary injury which was previously held compensable."
In Sosenko we went on to hold that inasmuch as the facts there demonstrated that there had been a primary accident followed by a secondary heart attack, the Full Commission was in error in applying the Victor Wine rationale; it was unnecessary for claimant to demonstrate that he was subject to undue stress and strain at the time the heart attack occurred. It was, however, necessary for claimant to prove a causal relationship between the accident and the heart attack.
The instant case falls within the first category described above: those situations in which an identifiable accident is followed by a heart attack. Thus, we are not concerned with problems of undue stress and strain and/or a determination of whether an accident in fact occurred. Rather, the question before us is whether or not the subsequent heart attack was causally related to the accident. The Judge of Industrial Claims, relying on the testimony and medical report of Dr. Armstrong, determined that it was. The Full Commission disagreed.
In arriving at its conclusion, the Commission relied primarily on three cases, all of which are readily distinguishable from the instant case. In Orange County Board of County Commissioners v. Brenemen, 233 So.2d 377 (Fla. 1970), an assistant prison warden suffered an intracranial hemorrhage after recapturing two prisoners who had escaped. In denying compensation we concluded that there was insufficient evidence of a causal relationship between the *297 employee's activities and the hemorrhage. That case did not involve an identifiable accident; thus, if it could be comprised by one of the two categories described supra, it would necessarily fall within the rule of Victor Wine, which we have said is inapplicable in the case sub judice.
In Arkin Construction Company v. Simkins, 99 So.2d 557 (Fla. 1957), claimant fell from a scaffold but continued his normal duties for two days; at the end of the second day he suffered heart failure after retiring to bed. We reversed the award of compensation by the Deputy Commissioner and the Industrial Relations Commission for lack of competent substantial evidence. It appeared that there was no testimony in the record that claimant experienced pain or fatigue after his fall; on the contrary, claimant's treating physician testified that he made no complaints after the accident, did not appear to be nervous or in pain, and did not show any signs of shock or approaching shock. This testimony was corraborated by the testimony of a fellow employee of claimant. In essence, therefore, we held that no causal connection between the minor injury and the heart attack was shown. In so holding we tacitly recognized that a finding of causal connection would be held if such finding were supported by competent substantial evidence. Inter alia, we stated:
"As we review the testimony of the specialist, produced by the claimants, he honestly states that the question of what caused or `triggered' the heart failure to occur when it did is not one of reasonable probability but is speculative. In the absence of facts which would show that following and as a result of the fall the deceased suffered shock, pain nervousness or anxiety, which would support the specialist's conclusion and which would remove it from the area of speculation. we cannot give it the weight of substantial evidence."
Finally, in Apgar & Markham Construction Company v. Golden, 190 So.2d 323 (Fla. 1966), we again recognized the general compensability of work-related heart attacks but denied compensation under the circumstances there:
"While many emotional reactions and resulting disabilities following an injury may likely be found compensable when there exists some reasonable relationship between the trauma and subsequent reaction, neither our statute nor cases appear to support the idea that disabilities caused solely by ecomomic anxiety following an injury should be covered. Some stress of that character may indeed be a natural consequence of any industrial injury. But the result, at least in the circumstances of this case, is indirect rather than direct. For this reason, as well as the illusory nature of the evidence relied on to connect claimant's heart attack with the requisite traumatic origin, we are unable to find an unbroken chain of causation for claimant's heart disability."
It seems clear that where a heart attack follows a compensable accident the question of causal relationship must be determined on a case by case basis. The fact that we found insufficient evidence of such a relationship in Arkin and Apgar does not preclude us from reaching a different result in the case sub judice. We have recited the testimony and report of Dr. Armstrong on this issue, and it is our opinion that this evidence, coupled with the testimony of claimant and his wife to the effect that claimant became increasingly nervous and began to suffer shortness of breath after the second accident, constitute competent substantial evidence of causal relationship sufficient to uphold the award of the Judge of Industrial Claims.
Accordingly, claimant's petition for writ of certiorari is granted and the order of the Industrial Relations Commission is quashed. Inasmuch as certain issues relating to contribution between the two carriers involved, which are raised here by cross-petition for certiorari order of the *298 Full Commission, the cross-petition for certiorari is denied and the cause remanded to the Commission for a determination of the remaining issues raised on application for review.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN and DEKLE, JJ., concur.