396 So.2d 163 (1981)
CITY OF MIAMI, Petitioner,
v.
Montague ROSENBERG et al., Respondents.
No. 57643.
Supreme Court of Florida.
March 12, 1981.
George F. Knox, Jr., City Atty., and Joseph Hackney, Jr., Asst. City Atty., Miami, for petitioner.
Brumer, Cohen, Logan, Kandell & Redlus and Sharon L. Wolfe of Greene & Cooper, Miami, for respondents.
BOYD, Justice.
This is an appeal of an Industrial Relations Commission order reversing the recommendation of the Judge of Industrial Claims and granting workers' compensation benefits to claimant who suffered a myocardial infarction. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
*164 The facts in this case are not in dispute. Claimant was sixty-nine years old at the time of the incident and had been an attorney for almost fifty years. In 1972 he began work as an assistant city attorney for the City of Miami. In early 1976 the claimant began to experience stress at his job because of pressure from his superiors to retire. In denying the claim the Judge of Industrial Claims specifically found:
That City Attorney Lloyd and Acting City Attorney Watson embarked upon a course of conduct designed to force the claimant to resign from his job. He was transferred from his normal job of defending the City in tort actions to handling legal matters pertaining to contracts. This latter job was out of his line and he found it to be boring and difficult. In addition, he was assigned to a small office which he shared with another attorney which was demeaning as well as inconvenient to him.
That shortly after Mr. Weston became Acting City Attorney, he advised the claimant he was going to fire him. The claimant wanted to continue working and advised Mr. Weston that he did not feel that he could fire him. As conditions worsened, the claimant became nervous, frustrated, despondent and depressed. Eventually, he was assigned no work at all. Mr. Weston was a contentious person with a military type personality. He created an air of constant friction between himself and the claimant. The claimant began smoking more heavily, and began to get pains in his left arm. John Ruff, a fellow employee in the City Attorney's office, observed the claimant's condition deteriorate. During this period of time, the claimant's mind would wander, he became extremely nervous, got tickets for traffic violations, and had two or three minor traffic accidents.
That the claimant described his last six months with the City as a life of "living hell"... . His wife testified that, during this time, he became a chain smoker, was extremely nervous, could not sleep at night, he paced the floor at night, his color changed to a grayish color, and he became a completely changed man.
That on Sunday, October 3, 1976, the claimant suffered an acute myocardial infarction with acute atrial fibrillation and a left bundle branch block. The claimant had had no symptoms of a heart condition prior to the six month's period immediately preceeding [sic] October 3, 1976.
That the claimant had long-standing arteriosclerotic heart disease with coronary atherosclerosis which pre-existed his heart attack of October 3, 1976. I find that the events described above, which the claimant was subjected to during the six months prior to his heart attack, did constitute unusual strain or over-exertion not routine to the type of work he was accustomed to performing. I further find that said strain or over-exertion did aggravate his pre-existing heart condition and did contribute to the heart attack he suffered on October 3, 1976. (In this connection, I have accepted the opinions of Dr. Neer and Dr. Thesing over the court-appointed physician). I further find, however, that for a heart attack to be compensable, the unusual stress or strain must be related to a "specifically identifiable event." Here, the unusual stress and over-exertion occurred over a period of six months and is not related to a "specifically identifiable event."
The Industrial Relations Commission reversed, finding that claimant had moved some heavy boxes the week immediately preceding his heart attack. Since the commission departed from the essential requirements of law in finding this activity precipitated the heart attack, we reverse.
Workers are entitled to compensation for heart attacks
if there is competent substantial medical testimony, consistent with logic and reason, that the strain and exertion of a specifically identified effort, over and above the routine of the job, combined with a pre-existing non-disabling heart disease to produce death or disability sooner than it would otherwise have occurred... .
*165 Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581, 589 (Fla. 1962). In a case very similar to this one the issue was raised whether a claimant was entitled to compensation if "his myocardial infarction was precipitated by a series of unusual, non-routine, work-related, emotionally traumatic events and circumstances compressed within a specific period of time, rather than a single isolated event." Richards Department Store v. Donin, 365 So.2d 385, 386 (Fla. 1978). We held that "for a heart attack occurring during the course of employment to be compensable, it must have been caused by the unusual strain or overexertion of a specifically identifiable effort not routine to the work the employee was accustomed to performing." Id. at 386.
The reason for requiring a specifically identifiable event was explained in Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340, 1342 (Fla. 1978):
We have had a number of "heart" cases in which we determined what was or what was not an unusual and non-routine strain or exertion within the definition of Victor Wine. These decisions have involved either physical strain or exertion alone or physical strain or exertion in concert with emotional strain, but in no case have we held emotional strain alone to be sufficient. Emotional strain is too elusive a factor to be utilized, independent of any physical activity, in determining whether there is a causal connection between a heart attack or other internal failure of the cardiovascular system and the claimant's employment.
In finding that claimant's moving the boxes precipitated his heart attack, the commission erred in two major respects. First, the temporal relationship between the two events does not suggest a causal connection. Contrary to the commission's statement, there was no evidence that claimant had moved the boxes in the week immediately preceding his heart attack. Instead claimant testified that he had moved the boxes some time during the six months prior to having his heart attack.
Second, there is no medical testimony linking claimant's heart attack to any physical activity. The medical evidence merely established a link between claimant's heart attack and his psychological and emotional stress. Dr. Neer testified that the pressure on the job "would have some influence in precipitating the myocardial infarction, but it would not be the sole cause." (Tr. 193) Since the Judge of Industrial Claims was correct in finding no evidence that the heart attack was caused by a specifically identifiable event, the commission departed from the essential requirements of law in reversing his order.
We therefore reverse the commission's order and remand this case with instructions that the Judge of Industrial Claims' order be reinstated.
It is so ordered.
SUNDBERG, C.J., and OVERTON, ALDERMAN and McDONALD, JJ., concur.