444 So.2d 511 (1984)
WOLBERT, SAXON & MIDDLETON, and Travelers Insurance Company, Appellants,
v.
Betty N. WARREN, Appellee.
No. AQ-444.
District Court of Appeal of Florida, First District.
January 20, 1984.
Rehearing Denied February 15, 1984.
*512 E. Robert Williams and James H. McCarty, Jr., of Boyd, Jenerette, Staas, Joos, Williams & Felton, Jacksonville, for appellants.
Anthony J. Salzman of Bessent, Moddy & Salzman, Starke, for appellee.
THOMPSON, Judge.
In this appeal from a compensation order awarding payment of past medical bills, the employer/carrier (E/C) contend that the deputy commissioner (deputy) erred in finding that a compensable accident occurred. We agree that no accident occurred, and reverse.
The claimant is a legal secretary, office manager, and bookkeeper who suffers from chronic asthma. During the more than four years she worked with the employer law firm, she enjoyed a position of considerable responsibility and had an excellent working relationship as personal secretary to Mr. Wolbert, a partner in the firm. Although claimant has been an asthma sufferer since 1968, her illness was nondisabling and had always been well controlled with prophylactic medications prior to the events which led to the filing of her instant claim. In fact, until claimant was stricken by the asthma attack at issue here, she had never had an acute asthma attack and had never missed a single day's work because of her chronic asthmatic condition.
On the evening of Friday, November 27, 1981, the claimant undertook to balance and reconcile the employer's trust account ledger, which was a part of her regular duties. In the course of balancing the trust account, she discovered certain discrepancies and irregularities which led her to believe that Wolbert might have improperly withdrawn approximately $16,000 from the account funds. The claimant testified that over the week-end she experienced increasing difficulties with her asthma, and was required to repeatedly take medication. Upon arriving at work on Monday, November 30, 1981, the claimant approached Wolbert about the trust account problem. Wolbert indicated that he had to leave immediately for a hearing and told her he would discuss the matter with her when he returned. However, Wolbert did not return to the office that day even though his absence caused him to miss several scheduled appointments with clients. Because of Wolbert's refusal to explain the irregularities in the trust account, and because he appeared to be avoiding her, the claimant concluded that Wolbert was indeed responsible for the missing money, and that serious trouble lay ahead for Wolbert, his partners, and the employees of the firm. That night and during the early morning hours of December 1, 1981, claimant's asthma worsened to the point that her medications were not controlling it and she was having difficulty breathing. At approximately 8:00 a.m. on the morning of December 1, while on her way to see her doctor, the claimant again stopped at her office in order to attempt to speak with Wolbert about the trust *513 account, but he again refused to talk to her and left the office. Claimant then proceeded to the doctor's office. The doctor's ministrations failed to relieve her asthma attack, and she had to be hospitalized. Because of the severity of the asthma attack, claimant was required to remain in the hospital for five days, and for a period of several months thereafter required treatment and medication in excess of the treatment and medication regimen which had successfully controlled her asthma during the 13 years prior to the discovery of her employer's defalcations.
The claimant testified that she experienced tremendous emotional shock and strain upon discovery of the irregularities in the trust account, and that the emotional trauma of the discovery was exacerbated by the necessity of confronting Wolbert about the matter and by Wolbert's refusal to provide a satisfactory explanation as to why the money had been withdrawn from the trust account. She further testified that her worry concerning the future of Wolbert, whom she liked and respected, as well as her worry about the future of the firm and her fellow employees, had caused the unprecedented attack. However, claimant admitted that she had not been physically injured on the job, and our review of the record discloses absolutely no evidence that even the slightest physical trauma or impact occurred. Neither was there evidence that the discovery had caused or required claimant to engage in any unusual physical activity or exertion, or that claimant was exposed at any time to any sort of dust, fumes, or other airborne agents in the work place which might have brought on the attack.
In the order appealed, the deputy found that the emotional strain associated with the discovery of the trust account irregularities had caused an aggravation of claimant's pre-existing, nondisabling chronic asthmatic condition, and that the attack was compensable since it had been precipitated by a compensable accident. We are unable to agree with the deputy's implicit and unexplained conclusion that a compensable accident occurred.
The E/C argued below, and continue to maintain here, that an aggravation of an underlying pre-existing asthmatic condition should be considered analogous to an aggravation of a pre-existing cardiovascular condition, and should be ruled non-compensable when caused by mental or emotional stress alone, unaccompanied by any unusual physical strain or exertion. In discussing prior cases in which claims for compensation arising out of alleged work related aggravations of pre-existing cardiovascular conditions were held compensable, our Supreme Court has twice held:
These decisions have involved either physical strain or exertion alone or physical strain or exertion in concert with emotional strain, but in no case have we held emotional strain alone to be sufficient. Emotional strain is too elusive a factor to be utilized, independent of any physical activity, in determining whether there is a causal connection between a heart attack or other internal failure of the cardiovascular system and the claimant's employment.
City of Miami v. Rosenberg, 396 So.2d 163, 165 (Fla. 1981) (quoting Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340, 1342 (Fla. 1978)). For purposes of determining the compensability of an injury under our Workers' Compensation law, we are entirely unable to distinguish an internal failure of the pulmonary system caused solely by emotional stress from similarly caused internal failures of the cardiovascular system. Although in Rosenberg the court affirmed the finding of the Judge of Industrial Claims that there was "no evidence that the heart attack was caused by a specifically identifiable event," and although there was evidence in this case that a specific event precipitated claimant's asthma attack, in Mosca and in the numerous cases reviewed by the court in Mosca, the court consistently referred to the necessity of showing a "specifically identifiable effort" on the part of the claimant. Notwithstanding the reference in Rosenberg to a specifically identifiable event, we feel that the above-quoted passage from Rosenberg and *514 Mosca makes it clear that there must be an accident in the usual sense of the word, or at the very least, some showing of a specifically identifiable physical strain, effort, exposure or event. Even if we were inclined to find that the reference in Rosenberg to an "event" represented a change in our Supreme Court's approach to the problem of exacerbations of pre-existing conditions by work related activities, the elusiveness of the concept of emotional strain, with the concommitant impossibility of consistently and correctly determining causation, would remain. In any event, the only medical evidence as to causation was a brief notation, appearing in the doctor's report, that "[h]er asthma attack could have been brought on due to her working under stress." (emphasis added). This speculative statement is clearly insufficient to establish causation. Kashin v. Food Fair, 97 So.2d 609 (Fla. 1957); Newman Heating & Boiler Repair, Inc. v. Newman, 418 So.2d 1008 (Fla. 1st DCA 1982), pet. for rev. den, 429 So.2d 7 (Fla. 1983). Because it is conceded that claimant's asthma attack was not precipitated by any physical condition to which she was exposed in the work place, and because it is conceded that no unusual physical effort or event occurred, we find that the compensation order herein appealed must be reversed.
NIMMONS, J., concurs.
ERVIN, C.J., dissents with opinion.
ERVIN, Chief Judge, dissenting.
I respectfully dissent. The deputy, after hearing and considering the testimony of claimant and her witnesses, concluded that the emotional strain experienced by claimant over a five-day period, during which she first discovered, and then attempted to confront her employer with a $16,000.00 shortage in the law firm trust account, amounted to an "accident" which aggravated claimant's pre-existing, but previously non-disabling asthmatic condition. In ruling that claimant's acute asthmatic attack was compensable, the deputy considered and rejected the e/c's contention that rules, formulated to meet specific and unique evidentiary problems peculiar to cases involving internal failures of the cardiovascular system, should be extended to apply also to an aggravation of the claimant's asthmatic illness. In my view the deputy's resolution of this case was a judgment call on his part and, in the absence of a showing of a lack of competent substantial evidence to support his findings, the order should be affirmed.
I am particularly concerned by the majority's holding, extending standards which have been routinely applied to cases involving internal failures to a case such as this, entailing nothing more than an aggravation of a pre-existing disease, heretofore chronic but low-grade, minor and non-disabling. The cases of Rosenberg and Mosca, which the majority finds controlling, are part of a long line of decisions that have grappled with the question of compensability in situations where a claimant suffers a heart attack, or a similar failure of the cardiovascular system, while carrying out his routine tasks at work. Thus, if the evidence fails to disclose an identifiable accident, the authorities require proof demonstrating the existence of both legal and medical causation as a predicate to an award of compensation, for the obvious reason that the internal failure may be attributable to the natural progress of the disease which could precipitate a collapse during working hours, as well as non-working hours. McCall v. Dick Burns, Inc., 408 So.2d 787, 790 (Fla. 1st DCA 1982).
The test for legal causation is set out as follows in the seminal decision of Victor Wine and Liquor, Inc. v. Beasley, 141 So.2d 581, 588-589 (Fla. 1962):
When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing.

(emphasis supplied) Once a claimant has met the burden of establishing legal causation, *515 he must then present evidence going to the test of medical causation, by showing "a causal relationship between the strain or over-exertion and the heart attack within reasonable medical probability." McCall, 408 So.2d at 791-792. As the majority correctly observes, the effect of Mosca is to extend the Victor Wine test to all types of internal failures of the cardiovascular system. I am unable to agree, however, with the majority's conclusion that the burden of proof applicable to those circumstances in which an employee "collapses solely due to an internal physical malfunction," Southern Bell Telephone & Telegraph Co. v. McCook, 355 So.2d 1166, 1169 (Fla. 1977) (emphasis supplied), should be expanded to the facts of this case. In the absence of the unique evidentiary problems posed by internal failure cases where no identifiable accident has occurred, I find such an extension to be totally unwarranted.
Despite the majority's characterization of claimant's injury as an "internal failure of the pulmonary system," in my judgment it is clear that claimant's acute asthmatic attack was, as the deputy found, merely the result of an "aggravation of a non-disabling, underlying, pre-existing, chronic condition." In such cases the rule universally applied is as follows:
Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.

1 A. Larson, The Law of Workmen's Compensation § 12.20 (1982) [hereinafter: Larson] (emphasis supplied). Unlike internal failure cases, aggravation cases rarely involve questions of legal causation: "[I]n practice most of the problems in this area are medical rather than legal." Larson, supra. In such cases the deputy is simply called upon to determine whether medical causation exists to support an award of compensation:
Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by the commission based on any medical testimony, or, in the commoner afflictions where the commissioners themselves have acquired sufficient medical expertise, based on the commission's expert knowledge even without medical testimony, will not be disturbed on appeal.

Larson, supra (emphasis supplied).
The facts in the case at bar clearly support the deputy's finding that the "emotional strain (based on Dr. Hernandez's statement of April 19, 1982, and the doctrine of most logical cause) triggered an acute asthma attack... ." Dr. Hernandez's report, which was admitted, without objection by the e/c, stated that the "attack could have been brought on due to her working under stress." (emphasis supplied) The competency of this statement has not been assailed on appeal. The point raised by the e/c involves simply the legal question of "[w]hether an asthma attack caused solely by emotional anxiety or stress is a compensable accident or injury under the Workers' Compensation Act." (emphasis supplied) Appellant's point, as phrased, thus assumes, for the purpose of its argument, the competency and sufficiency of evidence supporting the deputy's finding relating the asthma attack to the industrial, emotional strain.
The majority's requirement that a claimant, whose pre-existing asthmatic condition is aggravated or accelerated by an industrial "accident", satisfy the enhanced burden of proof applicable to internal failure cases represents in my judgment a disregard of general rules of interpretation pertinent to workers' compensation cases which counsel a liberal construction in favor of the worker, see Hardaway Construction Company v. Brooks, 416 So.2d 837 (Fla. 1st DCA 1982), and is contrary to the weight of out-of-state authority involving asthma cases that has long characterized the condition simply as an aggravation of a prior *516 disease, and not an internal failure.[1] Although there are no Florida cases that have specifically addressed the question now before us, similar cases having to do with pulmonary diseases have never applied the enhanced burden applicable to internal failure cases. See, e.g., Czepial v. Krohne Roofing Company, 93 So.2d 84 (Fla. 1957) (aggravation or acceleration of a pre-existing plumonary tuberculosis condition by exposure to tar fumes and dust amounted to an "accident" for Chapter 440 purposes); Hilton v. Guerdon Industries, Inc., 382 So.2d 134 (Fla. 1st DCA 1980) (aggravation of claimant's emphysema by exposure to dust at work was compensable). In view of the above authorities, I find no justification to impose standards uniquely applicable to internal failure to a case such as this simply because the aggravation was caused by severe emotional strain, rather than by physical injury.
Even assuming, for the sake of argument, that such a standard should be visited upon the claimant, the deputy's finding that the events of November 27-December 1, precipitating the acute asthma attack, constituted an "accident," eliminates any requisite that the claimant satisfy the Victor Wine test of legal causation. This test recognizes that a heart attack may be compensable if the claimant is subjected to "overexertion uncommon to the type of work that he was accustomed to," or if the heart attack resulted from "an accident which arose `out of and in the course of employment.'" 141 So.2d at 584 (emphasis supplied). Two years later the court refined the "accident" exception to Victor Wine in Scott v. Kerr, 156 So.2d 847 (Fla. 1963), holding compensable a heart attack suffered by a butcher immediately after he had attempted to catch a falling 65-pound box of chicken. Because an identifiable, work-related accident was shown, i.e., the attempted catch, the court found it irrelevant to the question of compensability to decide whether the butcher's activities that day were unusual.
Since then both the Florida Supreme Court and this court have held that when a heart attack or other internal failure results from an identifiable accident, the claimant need not satisfy the legal causation prong of the Victor Wine test. See Tingle v. Board of County Commissioners, 174 So.2d 1 (Fla. 1965); Reynolds v. Whitney Tank Lines, 279 So.2d 293 (Fla. 1973); Wallen v. Salon of Music, Inc., 418 So.2d 421 (Fla. 1st DCA 1982); Lone Star of Florida v. Rodriguez, 416 So.2d 859 (Fla. 1st DCA 1982); Great Dane Trailers v. Flis, 435 So.2d 931 (Fla. 1st DCA 1983). Particularly compelling, I think, is the recent case of Popiel v. Broward County School Board, 432 So.2d 1374 (Fla. 1st DCA 1983), in which Popiel and a fellow school board employee were enroute to a school board facility when they became lost and stopped to ask directions. A thief approached the car, and, while reaching through the window, snatched a gold chain from around Popiel's neck. Although she suffered no physical trauma from the incident, Popiel collapsed and died of a heart attack a few hours later. In reversing the deputy's denial of death benefits to Popiel's surviving spouse, this court commented:
[U]nder Florida workers' compensation law there are two lines of cases dealing with the compensability of heart attacks. It is true that Victor Wine and its progeny hold that heart attacks are compensable only if suffered while the employee *517 was engaged in some unusual strain or over-exertion not routine to the employment. Richard E. Mosca & Co. v. Mosca, 362 So.2d 1340 (Fla. 1978); Silvera v. Miami Wholesale Grocery, Inc., 400 So.2d 439 (Fla. 1981). Another line of cases, however, finds compensability where an employee is injured in an identifiable accident which either immediately or subsequently results in a heart attack. Reynolds v. Whitney Tank Lines, 279 So.2d 293 (Fla. 1973); Whallen v. Salon of Music, 418 So.2d 421 (Fla. 1st DCA 1982); Lone Star of Florida v. Rodriguez, 416 So.2d 859 (Fla. 1st DCA 1982).
Id. at 1375 (emphasis supplied). Finding that Popiel had in fact suffered an identifiable accident and that the medical evidence established a causal connection between the accident and her subsequent heart attack, we concluded that compensation should have been awarded.
If the majority is then correct in exacting burden of proof standards customarily applicable to internal failure cases, those cases convincingly demonstrate that the legal causation requirement is obviated if a claimant can establish the occurrence of an "accident" which, for purposes of Chapter 440, is defined as "... an unexpected or unusual event or result, happening suddenly." § 440.02(18), Fla. Stat. (1981) (emphasis supplied). Consistent with the "most favorable remedy" doctrine, stating that "`where the [Workers' Compensation] Act is susceptible of disparate interpretations, the court will adopt the construction which is most favorable to the employee'", Kerce v. Coca-Cola Company-Foods Division, 389 So.2d 1177, 1178 (Fla. 1980), the courts of this state have consistently given a broad and liberal interpretation to the term "accident". Accordingly, to satisfy the requisite of an accident, a claimant need only "make a showing of some event or circumstances connected with his work to which his injury can be directly attributed." Gray v. Employers Mut. Liability Ins. Co., 64 So.2d 650, 651 (Fla. 1952) (emphasis supplied). It is enough if there was an unexpected "result, even though there was no unexpected cause, such as a slip, fall or misstep, in order to constitute an "accident" within the meaning of the Workmen's Compensation Law... ." Id. The rule that no actual slip, fall, or blow is required applies even in cases involving internal failures of the cardiovascular system. See Victor Wine, 141 So.2d at 588 (expressly approving Gray). Similarly, the "fundamentally accidental nature of the injury is not altered by the fact that, instead of a single occurrence, it is the cumulative effect" of a series of occurrences or exposures. Czepial, 93 So.2d at 86 (emphasis supplied). In considering the case law interpreting the term "accident", and the liberal construction we are bound to apply, there should be no reason to doubt that the occurrences of November 27-December 1 were correctly described by the deputy as "unexpected and unusual" events in claimant's employment, resulting in an acute asthma attack that was, given claimant's prior medical history, both unexpected and unusual. The fact that those events occurred over a five-day period does not, according to Czepial, detract from the fact that such events happened "suddenly".
I would therefore uphold the deputy's refusal to extend internal failure standards to cases involving aggravations of pre-existing conditions. Alternatively, even if such standards are proper, the deputy's finding that an identifiable accident had occurred was sufficient to eliminate any requirement that claimant show her asthma attack was precipitated by a specifically identifiable, physical strain or effort.
NOTES
[1] See Jenkins v. Ogletree Farm Supply, 291 So.2d 560 (Miss. 1974) (pre-existing condition of asthma and emphysema aggravated by inhalation of dust at work which constituted a compensable accident without the necessity of showing physical injury or overexertion); Breitfeld v. Cosmo Optics, Inc. 54 A.D.2d 816, 387 N.Y.S.2d 923 (App.Div. 1976) (exposure to silica dust aggravated asthma); Bichowsky v. Hickey Freeman Co., 11 A.D.2d 877, 203 N.Y.S.2d 486 (App.Div. 1960) (asthmatic condition aggravated by prolonged working with wool); Wannemacher v. Wannemacher Baker, Inc., 9 A.D.2d 835, 192 N.Y.S.2d 696 (App.Div. 1959) (asthma and emphysema aggravated by exposure to flour); Mayr v. Price, 9 A.D.2d 801, 192 N.Y.S.2d 752 (App.Div. 1959) (bronchial asthma aggravated by exposure to flour). Cf. Steverson v. E.I. DuPont De Nemours Company, 208 Tenn. 243, 345 S.W.2d 671 (1961) (compensation denied where claimant failed to show chlorine gas aggravated asthmatic condition).